# United States District Court

### WESTERN DISTRICT OF NEW YORK



**In the Matter of**

IN THE MATTER OF THE :
APPLICATION OF THE UNITED :
STATES OF AMERICA FOR A :
WARRANT AUTHORIZING THE CONTINUED:
USE OF A TRACKING DEVICE ON A   GRAY:
2016 GMC ACADIA BEARING NEW YORK :
REGISTRATION GZR1144 WITH VIN :
1GKKVRKD1GJ113205 :

673

15-MJ-4154

## APPLICATION FOR A WARRANT AUTHORIZING
## THE CONTINUED USE AND MONITORING OF A GPS TRACKING DEVICE

I, CHRISTOPHER MAHAFFY, being duly sworn depose and say:

I am a Special Agent with U.S. Drug Enforcement Administration (DEA), and have reason to believe that probable cause exists for the installation and monitoring of a tracking device on

a gray 2016 GMC Acadia, bearing New York registration GZR 1144 and VIN 1GKKVRKD1GJ113205, registered to EAN Holdings LLC, 6929 N Lakewood Avenue, Tulsa, Oklahoma 74117

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. §§ 841 and 846.

The facts to support a finding of Probable Cause are as follows:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:     (✔) Yes     (  ) No

_____
CHRISTOPHER MAHAFFY
Special Agent, Drug Enforcement Administration
Signature of Affiant

Sworn to before me and subscribed in my presence,

November **13**, 2015
Date

Rochester, New York
City and State

_____
HON. Jonathan W. Feldman, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE              :
APPLICATION OF THE UNITED         :
STATES OF AMERICA FOR A           :
WARRANT AUTHORIZING THE           :        15-MJ-4154
CONTINUED USE OF A TRACKING       :
DEVICE ON A GRAY 2016 GMC ACADIA  :
BEARING NEW YORK REGISTRATION     :
GZR1144 WITH VIN 1GKKVRKD1GJ113205 :

## AFFIDAVIT IN SUPPORT OF MOTION FOR CONTINUED USE OF GPS TRACKING DEVICE

Your affiant, Christopher Mahaffy, having been duly sworn, states the following:

1.    I am a Special Agent with the Drug Enforcement Administration (DEA), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801, et seq. And Title 18, United States Code, Section 2516(1).

2.    I have been employed with the Drug Enforcement Administration (DEA) since May 4, 2014. I am currently assigned to the DEA Rochester Resident Office. Prior to being a Special Agent with the Drug Enforcement Administration, I received a Bachelor's of Arts in Public Justice from the State University of New York at Oswego in May 2007. I completed 18 weeks of training at the DEA Office of Training, located in Quantico, Virginia, prior to being

1

assigned to the Rochester Resident Office. My training included classroom preparation in drug trafficking networks, drug identification, as well as practical application of surveillance, drug investigation, and arrest procedure. I am familiar with the methods of use, effects, distribution, appearance, as well as the methods of manufacture of controlled substances. I have experience in the investigation of violations of federal and state narcotics laws. During my time at the Rochester Resident Office, I have participated in investigations involving drug trafficking and organized crime matters, including two long-term narcotics investigations that utilized the court-authorized interception of wire communications that have resulted in the arrest of drug distributors, and the seizures of quantities of controlled substances. In addition, I have had the opportunity to work with other DEA agents and law enforcement officers, who have also investigated drug trafficking networks.

3.      I am presently investigating the activities of Blake RIVERA  for possible violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute, and distribution, of a controlled substance) and 846 (conspiracy to possess with intent to distribute, and to distribute, a controlled substance). I submit this affidavit in support of an application for a warrant authorizing the continued use of a mobile tracking device on the automobile currently being used by Blake RIVERA, that is, a silver 2016 GMC Acadia, bearing New York registration GZR 1144 and VIN 1GKKVRKD1GJ113205, registered to EAN Holdings LLC, 6929 N Lakewood Avenue, Tulsa, Oklahoma 74117 and rented in the name of and utilized by Blake RIVERA (hereinafter SUBJECT VEHICLE).

2

4.    Probable cause exists to believe, and I do believe, as more fully set forth herein, that the continued use of a mobile tracking device in or on the SUBJECT VEHICLE will lead to evidence of the above referenced crimes as well as the identification of individuals who are engaged in the commission of those and related crimes.  The purpose of this affidavit is solely to establish probable cause for the continued installation, tracking, and monitoring of a mobile tracking device and, therefore, not all aspects of this investigation are contained herein.  I have participated in the investigation that is the subject of this affidavit in conjunction with other law enforcement officers.  As a result of this participation, as well as information provided by other law enforcement officers, I am fully familiar with the facts set forth herein.

## INVESTIGATION BACKGROUND

5.    On July 29, 2015, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days on a 2015 Dodge Challenger, bearing Virginia registration VHB-2879 and VIN 2C3CDZAG9FH850140, rented in the name of and utilized by Blake RIVERA.  A copy of the search warrant and underlying application are attached hereto as Exhibit 1 and incorporated by reference as if fully set forth herein (hereinafter "the July 29th application").

6.    On August 26, 2015, the Honorable Marian W. Payson, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days on a 2015 GMC Yukon, bearing Maryland registration 5BR-1811 and VIN

3

1GKS2HKC2FR265780, rented in the name of and utilized by Blake RIVERA. A copy of the search warrant and underlying application are attached hereto as Exhibit 2 and incorporated by reference as if fully set forth herein (hereinafter "the August 26th application").

7.      On October 1, 2015, the Honorable Marian W. Payson, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days the SUBJECT VEHICLE, rented in the name of and utilized by Blake RIVERA. A copy of the search warrant and underlying application are attached hereto as Exhibit 3 and incorporated by reference as if fully set forth herein (hereinafter "the October 1st application").

8.      The investigative team began monitoring the GPS tracking device on the SUBJECT VEHICLE on or about October 2, 2015. During the monitoring period, on October 7, 2015, at approximately 6:31 p.m., the GPS tracking device assisted agents in determining that the SUBJECT VEHICLE traveled to Uncle Bob's Self Storage, 2585 Brighton Henrietta Town Line Road, Rochester, New York 14623 (hereinafter "Uncle Bob's"). Video footage from Uncle Bob's showed the SUBJECT VEHICLE pulling up a few feet from Storage Unit #503 after making entrance to the facility through the security gate. A single adult male exits the driver's side of the SUBJECT VEHICLE wearing a dark jacket. The adult male goes around the back of the SUBJECT VEHCILE and opens Storage Unit #503 before entering the unit. The male is in the unit approximately three minutes and fifteen seconds before he returns to the passenger side of the SUBJECT VEHCILE briefly. The male then closes the storage unit and returns to the driver's side

4

of the SUBJECT VEHICLE, departing shortly afterward. The SUBJECT VEHICLE was in the

vicinity of Storage Unit #503 for less than five minutes. It should be noted that the operator of the

SUBJECT VEHICLE left the vehicle and lights on when he arrived at the storage unit and the lights

partially obscured the view from the security camera. Information received has shown that Storage

Unit #503 was rented by Grissel Rivera, Blake RIVERA's wife, on November 27, 2012. The unit

currently has a monthly fee of $180.00. Information compiled between data from the GPS tracking

device, entry logs of Uncle Bob's, and the security cameras at Uncle Bob's has shown that the

SUBJECT VEHICLE has returned to Storage Unit seven additional times: on October 12, 2015, at

approximately 11:31 p.m.; on October 15, 2015, at approximately 9:19 p.m.; on October 24, 2015,

at approximately 7:06 p.m.; on October 27, 2015, at approximately 8:45 p.m.; on October 31, 2015,

at approximately 9:23 p.m.; on November 1, 2015, at approximately 8:52 p.m.; and on November 7,

2015, at approximately 8:36 p.m. All of these visits to the Storage Unit are consistent with in time

and duration of the visit described above on October 7, 2015. It should also be noted that Uncle

Bob's entry logs showed that RIVERA's password was entered into the system on September 27,

2015, at approximately 7:08 p.m., shortly after RIVERA had dropped off a previously rented GMC

Yukon at Enterprise and picked up the current SUBJECT VEHICLE. Based on my training and

experience, the use of a storage unit is behavior commonly associated with drug dealers distributing

large amounts of narcotics as drug dealers often keep narcotics and/or currency in storage units in

order to keep the items safe from other drug dealers and to avoid detection from law enforcement.

Additionally, RIVERA has not been observed transporting large household items or storage boxes to

the storage unit. The discovery of the storage unit via the use of a GPS tracking device further assists law enforcement in determining RIVERA's drug trafficking methods and patterns, as it has identified another location in which narcotics and/or related currency is being kept.

9. On October 14, 2015, at approximately 1:45 a.m., the GPS tracking device assisted agents in identifying an unknown female (UF) being picked up by RIVERA at the bus station in Rochester, New York. Video footage from the bus station showed the UF exiting a bus that recently arrived at the bus station with a couple of bags. The UF then walked towards the back of the bus in the direction of a parking lot to the south of the bus station and out of view of the security cameras. After speaking with a manager at the bus station, your Affiant learned that the bus in question was Bus # 86112, completing Trip# 270. The originating city was New York City while Rochester, New York was the first stop on its route, arriving at approximately 1:31 a.m. on October 14, 2015. At approximately 1:45 a.m., the SUBJECT VEHICLE pulled into the bus station lot from North Clinton Avenue and traveled through the lot before departing onto Joseph Avenue. The SUBJECT VEHICLE then traveled to 164 Curtis Street, Rochester, New York, the location where RIVERA operates his drug trafficking organization. It should be noted that there is a section of the lot in the direction of where the UF walked towards that is out of view from the security cameras at the bus station. This section encompasses approximately 50 feet of the driveway in which the SUBJECT VEHICLE traveled. It took the SUBJECT VEHICLE approximately twenty seconds to travel this distance and come into view on an additional security camera, indicating that the SUBJECT VEHICLE likely picked up the UF while traveling through the parking lot. It should be noted that

6

this behavior is consistent with the behavior detailed in the October 1st affidavit and is indicative of drug dealers using drug couriers to transport narcotics and/or currency. The discovery of the UF is important to the investigation of RIVERA as it shows that he is likely getting supplied by multiple regions of the country. Prior CS information has detailed that RIVERA distributes both cocaine and heroin in the Rochester, New York area. Through the use of a GPS tracking device, law enforcement has now identified two potential source cities, Cleveland, Ohio, and New York City, New York.

10.     As has been previously detailed in the previous affidavits, RIVERA often operates during the late night early morning hours and there is little vehicular traffic for law enforcement to blend with at these times. Without the use of a GPS tracking device agents would most likely be spotted by RIVERA or his associates and compromise the investigation. As agents learn RIVERA's methods of operation for his drug trafficking operation it is crucial to this investigation for agents to continue to utilize the GPS tracking device to further gain information on when and how he is being supplied cocaine. As well as, identifying additional co-conspirators and stash locations that RIVERA utilizes to operate his drug trafficking organization.

## USE OF GPS TRACKING DEVICE

10.     The goal of this investigation is not limited to arresting Blake RIVERA and charging him with the sales of cocaine to the two Confidential Sources. The goals also include

identifying the locations where RIVERA stashes his drugs and money and identifying RIVERA's sources, workers and customers. While monitoring of the GPS tracking device on the SUBJECT VEHICLE between October 2, 2015, and November 13, 2015, has given agents information on where RIVERA may be receiving his cocaine shipments and where he may be storing his narcotics and/or currency, it did not produce any evidence relating to the identities or exact locations of his suppliers. It is anticipated that, in the event the investigative team can monitor the requested GPS tracking device on the SUBJECT VEHICLE for an additional 45 day period, it will lead to evidence identifying his supplier(s) and the location(s) where his supplier(s) operates. It also should be noted that previous trackers were not monitored the full 45 day period. The first two trackers, described above, were monitored for 24 days and 28 days, respectively because RIVERA returned the rental vehicles and monitoring stopped at that time. Based on my experience in this case and my training, I believe that it will be extremely difficult to establish and maintain surveillance on RIVERA as he travels in and around Rochester and outlying areas, without the installation of a GPS tracking device in the SUBJECT VEHICLE. Without the installation of a GPS device, surveillance of RIVERA would require investigators to physically follow him as he drives around the city and out of the city. This increases the likelihood that RIVERA and/or his associates will detect the police surveillance, thereby damaging the investigation by RIVERA and his associates switching vehicles, changing addresses and phone numbers, concealing or moving to new locations their drugs and drug proceeds and even leaving the area for a period of time.

8

11.     Therefore, your affiant requests authorization to continue to monitor a GPS mobile tracking device on the SUBJECT VEHICLE. Use of a mobile tracking device will allow the investigating agents to monitor the locations to which the SUBJECT VEHICLE is driven without having to remain in close sight surveillance, which will greatly reduce the risk that the investigation would be compromised. As noted above, your affiant believes that monitoring the mobile tracking device will lead to evidence of the aforementioned offenses, as well as to the identification of other individuals who are engaged in the commission of these offenses and related crimes.

12.     Your affiant requests authorization to install and/or remove a GPS mobile tracking device on the SUBJECT VEHICLE while it is in the Western District of New York. Because Blake RIVERA usually parks the SUBJECT VEHICLE in his driveway at his residence, it may be necessary to enter onto private property in order to effect the installation and/or removal of the mobile tracking device on the SUBJECT VEHICLE. To ensure the safety of the executing officers and to avoid premature disclosure of this ongoing and covert investigation, it is requested that the Court authorize installation and removal of the tracking device at any time in the day or night. I believe that if RIVERA were to learn of the tracking device or efforts by the investigative team to install the device, it would alert him and any co-conspirators to the existence of this ongoing, covert investigation. I further believe that if RIVERA was alerted to the existence of this investigation, he and/or any co-conspirators may become more secretive in their criminal activities, conduct their criminal activities at different

9

locations, harm suspected government agents and/or informants, threaten potential witnesses, flee the jurisdiction, conceal or destroy evidence, and otherwise seriously jeopardize this ongoing criminal investigation.

13.    In the event that the Court grants this application, investigators will monitor the mobile tracking device during both daytime and nighttime hours for a period of 45 days following the installation of the device.  The tracking device may produce signals from inside private garages or other such locations not open to public view or visual surveillance.

14.    As detailed in the attached and incorporated July 29th, August 26th, and October 1st applications, the SUBJECT VEHICLE is not the first rental car which RIVERA has rented and driven.  Should it become obvious that RIVERA is no longer using the SUBJECT VEHICLE because he has returned it to Enterprise, the monitoring of the GPS device will cease and it will be removed from the SUBJECT VEHICLE.  It is anticipated that if this happens, a new application for installation of GPS device on RIVERA's new rental will be made to the Court.

15.    Given the contents of this Affidavit and the ongoing nature of the investigation described herein, I respectfully request that the Court order that this affidavit, the application and the warrant be and remain sealed for a period of 45 days after the use of the tracking device has ended or until such time as the Court orders.    In accordance with Title 18, United States Code, Section 3103a (b), and Federal Rule of Criminal Procedure 41(f) (3), I further request that

10

the order granting this application delay notification of the execution of the order for a period not to exceed 45 days after the use of the mobile tracking device has ended because there is reasonable cause to believe that providing immediate notification would seriously jeopardize an ongoing investigation. As demonstrated above, there is probable cause to believe that Blake RIVERA is engaged in continued criminal activity. Were he to learn of the existence of the requested Order or to learn of the installation of the mobile tracking device, it would disclose to him that he is under investigation by law enforcement officers. Based on my training and experience, I believe that this would cause RIVERA to destroy evidence, such as narcotics, drug ledgers or the proceeds of narcotics transactions, and/or flee the jurisdiction and otherwise seriously jeopardize the ongoing criminal investigation. Notice therefore should be delayed so as to avoid seriously jeopardizing the ongoing criminal investigation involving Blake RIVERA.

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the DEA or their authorized representatives, including but not limited to, Rochester Police Department officers, other law enforcement agents, and technicians assisting in the above-described investigation, to continue to use and monitor a GPS mobile tracking device in or on the SUBJECT VEHICLE within the Western District of New York, and to remove said mobile tracking device from the SUBJECT VEHICLE after the use and monitoring of the tracking device has ended (or earlier should RIVERA return the SUBJECT VEHICLE to the rental car company); to enter onto private property for the purpose of installing, maintaining, repairing, and/or removing the tracking device; and to monitor the signals from that tracking

11

device, for a period of 45 days following the issuance of the warrant, including signals produced when the SUBJECT VEHICLE is inside private garages and other locations not open to the public view or visual surveillance, and when the SUBJECT VEHICLE is within or outside the Western District of New York, but within the United States.

Respectfully submitted,

CHRISTOPHER MAHAFFY
DEA Special Agent

Sworn to and subscribed before me on
this the 13 day of November, 2015.

HONORABLE JONATHAN W. FELDMAN
United States Magistrate Judge

12

**EXHIBIT 1**

# United States District Court

## WESTERN DISTRICT OF NEW YORK

### In the Matter of

IN THE MATTER OF THE
APPLICATION OF THE UNITED :
STATES OF AMERICA FOR A :
WARRANT AUTHORIZING THE USE :        15-MJ-626
AND INSTALLATION OF A TRACKING:
DEVICE ON A 2015 DODGE :
CHALLENGER BEARING VIRGINIA :
REGISTRATION VHB-2879 WITH VIN :
NUMBER OF 2C3CDZAG9FH850140 :

## WARRANT FOR THE INSTALLATION AND MONITORING OF A GPS TRACKING DEVICE

TO:    Any authorized law enforcement officer

An affidavit having been made before me by DEA Special Agent SABATINO SMITH, who believes probable cause exists for installation and monitoring of a tracking device on

    2015 DODGE CHALLENGER BEARING VIRGINIA REGISTRATION VHB-2879 WITH VIN NUMBER OF
    2C3CDZAG9FH850140

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. " 841 and 846.

I am satisfied and find the affidavit establishes probable cause to believe that the vehicle so described is designed for use, is intended for use and/or is being used in facilitating the commission of offenses in violation of 21 U.S.C. §§ 841 and 846, and establishes probable cause for the issuance of this warrant, specifically probable cause to believe that the monitoring of a GPS tracking device on the SUBJECT VEHICLE will lead to evidence of violations of 21 U.S.C. §§ 841 and 846 and to the identification of other individuals involved in the commission of such offenses.

ACCORDINGLY, YOU ARE HEREBY AUTHORIZED, pursuant to 18 U.S.C. § 3117 and Fed. R. Crim. P. 41, to install, activate and monitor (and at the expiration of the monitoring period, to remove) a GPS tracking device in or on the above-described vehicle within the United States, on or before **AUGUST 5 2015** (not to exceed 10 calendar days), at any time in the day or night, as I find reasonable cause has been established, and

YOU ARE FURTHER AUTHORIZED to enter onto private property to effect the installation, maintenance, repair, and removal of the tracking device in or on the above-described vehicle, and

YOU ARE FURTHER AUTHORIZED to use and monitor the tracking device for 45 days (not to exceed 45 days from the date this warrant is issued), including when the above-described vehicle is inside any private garage or other location not open to public view or visual surveillance, within the United States, which time period may be extended pursuant to Fed. R. Crim. P. 41(e)(1)(B), and serve a copy of this warrant on the person whose vehicle was tracked within 30 calendar days after the use of the tracking device has ended, absent a subsequent request to further delay such notice as provided in Fed. R. Crim. P. 41(f)(3), and return this warrant to the undersigned within 10 calendar days after the use of the tracking device has ended.

IT IS FURTHER ORDERED that this warrant, and the accompanying application and affidavit submitted in support thereof, as they reveal the details of an ongoing investigation, be sealed until further order of the Court, except that copies of the warrant may be maintained by the United States Attorney's Office, and may be served on Special Agents of the United States Drug Enforcement Administration, and any other technical, investigative, or law enforcement officers assigned to this investigation, as necessary to effectuate this warrant.

July 29 2015 at **4:17 P.M.**                 at        Rochester, New York
Date and Time Issued                                    City and State

HON. Jonathan W. Feldman, U.S. Magistrate Judge
Name & Title of Judicial Officer                        Signature of Judicial Officer

Tracking Device Warrant (Rev. 04/07)

# United States District Court

### WESTERN DISTRICT OF NEW YORK



FILED

JUL 29 2015

MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

In the Matter of

IN THE MATTER OF THE
APPLICATION OF THE UNITED
STATES OF AMERICA FOR A
WARRANT AUTHORIZING THE USE
AND INSTALLATION OF A TRACKING
DEVICE ON A 2015 DODGE
CHALLENGER BEARING VIRGINIA
REGISTRATION VHB-2879 WITH VIN
NUMBER OF 2C3CDZAG9FH850140

:
:
:
:
:
:
:
:
:
:
:

15-MJ-626

## APPLICATION FOR A WARRANT AUTHORIZING
### THE INSTALLATION AND MONITORING OF A GPS TRACKING DEVICE

I, SABATINO SMITH., being duly sworn depose and say:

I am a Special Agent with U.S. Drug Enforcement Administration (DEA), and have reason to believe that probable cause exists for the installation and monitoring of a tracking device on

2015 DODGE CHALLENGER BEARING VIRGINIA REGISTRATION VHB-2879 WITH VIN NUMBER OF 2C3CDZAG9FH850140

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. §§ 841 and 846.

The facts to support a finding of Probable Cause are as follows:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:    (✔) Yes    ( ) No

SABATINO SMITH
Signature of Affiant

Sworn to before me and subscribed in my presence,

July 29 2015
Date

Rochester, New York
City and State

Signature of Judicial Officer

HON. Jonathan W. Feldman, U.S. Magistrate Judge
Name & Title of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE                           :
APPLICATION OF THE UNITED                      :
STATES OF AMERICA FOR A                        :
WARRANT AUTHORIZING THE USE                    :        15-MJ- 626
AND INSTALLATION OF A TRACKING                 :
DEVICE ON A 2015 DODGE
CHALLENGER BEARING VIRGINIA STATE
REGISTRATION VHB-2879 WITH VIN
NUMBER OF 2C3CDZAG9FH850140                     :

## AFFIDAVIT IN SUPPORT OF MOBILE TRACKING DEVICE

Your affiant, Sabatino Smith, having been duly sworn, states the following:

1.      I am a Special Agent with the Drug Enforcement Administration (DEA), and
as such I am an "investigative or law enforcement officer" of the United States within the
meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United
States who is empowered by law to conduct investigations of, and to make arrests for,
offenses enumerated in Title 21, United States Code, Section 801, et seq. And Title 18,
United States Code, Section 2516 (1).

2.      I have been a Special Agent with the Drug Enforcement Administration since
September 2009. Prior to being a Special Agent with the Drug Enforcement Administration,
I was employed as a Special Agent and Counter Sniper with the United States Secret Service
for eight years. In May of 2000, I received a Bachelor's of Science in Political Science from
the State University of New York at Brockport. During my employment with the Drug

Enforcement Administration, I have received (20) weeks of training in the methods used by drug trafficking and money laundering organizations. I have received training in the areas of drug identification, drug distribution methods, money laundering, financial investigations, and drug enforcement techniques. I am familiar with the methods of use, effects, distribution, appearance, as well as the methods of manufacture of controlled substances. I have experience in the investigation of violations of federal and state narcotics laws. I have conducted and participated in numerous narcotics investigations resulting in the arrest and conviction of drug distributors, and the seizure of quantities of controlled substances. During these investigations my participation has included, but has not been limited to, undercover operations; direction of confidential sources; debriefing of defendants and others involved in the distribution and consumption of illegal drugs; execution of search warrants; execution of arrest warrants; affiant on court-authorized Title III interceptions, search warrants, and criminal complaints; and I have been involved in numerous surveillance operations.

3. I am presently investigating the activities of Blake RIVERA for possible violations of Title 21, United States Code, Sections 841(a)(1) and 846 (Possession with Intent to Distribute and Distribution of Cocaine and Conspiracy to do so). I submit this affidavit in support of an application for a warrant authorizing the installation and use of a mobile tracking device on the automobile currently being used by Blake RIVERA, that is, a 2015 Dodge Challenger bearing Virginia state registration VHB-2879 with vin number of

2

2C3CDZAG9FH850140, registered to EAN Holdings LLC, 6929 North Lakewood

Avenue suite 100, Tulsa, Oklahoma 74117 and rented in the name of and utilized by Blake

Rivera, date of birth 06/08/84 of 276 Woodsmoke Lane, Rochester, New York, hereinafter

SUBJECT VEHICLE.


4.      Probable cause exists to believe, and I do believe, as more fully set forth

herein, that the installation and use of a mobile tracking device in or on the SUBJECT

VEHICLE will lead to evidence of the above referenced crimes as well as the identification

of individuals who are engaged in the commission of those and related crimes. The purpose

of this affidavit is solely to establish probable cause for the installation, tracking, and

monitoring of a mobile tracking device and therefore not all aspects of this investigation are

contained herein. I have participated in the investigation that is the subject of this affidavit

in conjunction with other law enforcement officers. As a result of this participation, as well

as information provided by other law enforcement officers, I am fully familiar with the facts

set forth herein.

## INVESTIGATION BACKGROUND

5.      In June of 2015, a confidential source, hereafter CS-1[1], advised Special Agent
Sabatino Smith and Rochester Police Department (RPD) Investigator Timothy Pearce that a
Hispanic Male named "Victor" is selling large amounts of cocaine in the Rochester, New
York area and that he is operating out of the residence located at 164 Curtis Street,
Rochester, New York. CS-1 gained intelligence from an unwitting associate, who will be
identified as UW to protect the identity of the confidential source. Information received
from CS-1 has revealed that UW has personal knowledge of the Hispanic Male distributing
cocaine from 164 Curtis Street and has purchased cocaine from him on prior occasions. CS-
1 stated that prior to this investigation and prior to the CS's cooperation in this case, UW
took CS-1 over to 155 Mc Ardle Street, Rochester, New York on a more than one occasion
and UW went into the location where UW entered the location and purchased cocaine from
Victor while CS-1 waited in the vehicle. On one of the occasions, UW told CS-1 that while
inside 155 McArdle UW observed several kilos of cocaine on a table.

---

[1] Your affiant states that CS-1 is personally known to your affiant and to other members of Drug Enforcement
Administration (DEA) and the Greater Rochester Area Narcotics Enforcement Team (GRANET) . CS-1 has pled
guilty to federal criminal charges and has agreed to cooperate in the hope of a reduced sentence. CS-1 has given
your affiant and RPD Investigator Timothy Pearce reliable information in the past, relative to narcotic trafficking and
illegal firearms, which has been independently corroborated and has led to controlled purchases of controlled
substances. CS-1 identity is being withheld from this affidavit to protect him/her from retaliation and to further
utilize him/her in this and future investigations.

6.   UW stated to CS-1 that Victor is not the main dealer.  UW stated that Victor's son, named Blake, is the leader of the drug trafficking organization (DTO).  UW told CS-1 that the father, Victor, has moved into 164 Curtis Street from 155 Mc Ardle Street-Downstairs Apartment. A records check has revealed that Blake Rivera, with a date of birth of 06/08/84, has used 164 Curtis Street as his home address in November 5, 2013. Upon checking the Monroe County MORIS system, your affiant did locate a Prisoner Data Report for Blake Rivera, with a date of birth of 06/08/84, who listed Victor Rivera as his father.

7.   Subpoenaed records from Rochester Gas and Electric showed that 164 Curtis Street is currently being subscribed under Grissel Rivera since October 21, 2009 and agents have identified Grissel Rivera as the wife of Blake RIVERA.

8.   An inquiry with the Monroe County Clerk Online Office, shows that Blake Rivera owns 164 Curtis Street and paid $30,000 for 164 Curtis Street in 2009. It also shows that he owns 230 Electric Avenue and paid $33,000 in 2013. Blake Rivera also purchased 276 Woodsmoke Lane on October 31, 2014 for $164,500.  Blake has a private mortgage loan on the property wherein he is required to pay back the entire $164,500 loan plus interest within three years, by December 1, 2017.

9.   **An inquiry with the New York State Division of Criminal Justice Services**, (E-Justice), indicates Blake Rivera, DOB 06/08/84 has the following criminal drug history:

On **01/22/04**, arrested for Criminal Possession of a Controlled Substance in the Third Degree, PL 220.16 (1), Criminal Possession of a Weapon in Second Degree, PL 265.03 (2), Unlawful Possession of Marihuana, PL 221.05 and Illegal Signal: Less Than 100 Feet From Turn, VTL 1163 (b); pled guilty January 5, 2005 to Criminal Possession of a Controlled Substance in the Third Degree, PL 220.16 (1); sentenced to one to three years in prison and license suspended for six months.

10.     Investigator Timothy Pearce and I showed CS-1 a photograph of Victor Rivera, with a date of birth of 02/22/64 and CS-1 identified Victor Rivera as the same male Hispanic that he/she had seen previously at 164 Curtis Street.

11.     On June 8, 2015, Investigator Pearce observed a 2015 Ford Escape bearing New York State registration GWD-9191 with VIN number of 1FMCU9G95FUB41833, registered to EAN Holdings LLC, 6929 North Lakewood Avenue, Tulsa Oklahoma 74117 pull into the driveway of 164 Curtis Street and pull behind the gate at this location. Shortly after this vehicle pulled into 164 Curtis Street, Investigator Pearce observed several vehicles arrive at 164 Curtis Street and stay for a short time. As part of this investigation, records were subpoenaed from the rental car company and showed that Blake Rivera, with a date of birth of 06/08/84 of 164 Curtis Street rented this vehicle on May 24, 2015.

6

12.     A couple of hours after observing this activity at 164 Curtis Street, Investigator Pearce spoke with CS-1 who stated that he/she received a call from UW and the UW stated that the cocaine source at 164 Curtis Street had just received a shipment of cocaine and was ready for the UW to come and purchase cocaine.

13.     After receiving this information, Investigator Pearce and your affiant formulated a plan to have CS-1 make a controlled purchase of cocaine from 164 Curtis Street. Investigator Pearce and your affiant searched CS-1 and his/her vehicle which yielded negative results. Agents provided CS-1 with a predetermined amount of US currency, official advanced funds (OAF). After speaking with CS-, investigators formulated a plan for CS-1 to pick up UW and drive him to 164 Curtis Street to purchase cocaine. CS-1 was surveilled to UW's location where he picked up the UW and then drove to 164 Curtis Street. UW exited the vehicle and walked into 164 Curtis Street. A short time later, UW departed the residence and entered CS-1's vehicle and departed the location. CS-1 dropped UW off and then met agents at a pre-determined location where CS-1 handed to agents a quantity of cocaine. This cocaine was field-tested and the result was positive for the presence of cocaine.

14.     **In late June of 2015,** another plan was formulated utilizing CS-1 to make a controlled purchase of cocaine from 164 Curtis Street. Investigator Pearce and I searched CS-1 and his/her vehicle which yielded negative results. Agents provided CS-1 with a predetermined amount of US currency, OAF. Again, CS-1 picked up UW from his location

and drove to 164 Curtis Street where UW exited the vehicle and walked into 164 Curtis Street. Investigator Pearce observed a 2014 Chrysler C30 bearing New York State registration GWD-9191 with VIN number of 1FMCU9G95FUB41833, registered to EAN Holdings LLC, 6929 North Lakewood Avenue, Tulsa Oklahoma 74117 parked in the driveway behind the gate of 164 Curtis Street. A records check showed this vehicle is an Enterprise rental vehicle and Blake Rivera, with a date of birth of 06/08/84 rented this vehicle on June 16, 2015. Moments later UW exited the residence and entered CS-1's vehicle and departed the location. While under continuous surveillance, CS-1 dropped off UW and met agents at the predetermined location where CS-1 handed to your affiant the predetermined amount of cocaine. This cocaine was field-tested and resulted positive for the presence of cocaine. CS-1 stated that when UW went into 164 Curtis Street, Blake's father Victor was conducting yard work in the front of the residence. The UW told CS-1 that Blake did not want to deal with CS-1 (who was unknown to Blake) and, instead, wanted to deal with UW only who Blake knew.

15.     Since the commencement of the investigation against Blake Rivera and his father Victor, Investigator Pearce and I have driven by 276 Woodsmoke Lane on several occasions, including early in the morning and have observed rental cars parked in the driveway of the residence. We have checked the registration of these cars and have confirmed that they have all been owned by EAN Holdings LLC, and rented from Enterprise Rental (a unit of EAN Holdings). During the period from approximately June

8

16 to approximately July 19, we observed a 2014 Chrysler C30 bearing New York State

registration GWD-9191 in the driveway of the 276 Woodsmoke Lane. This car was rented

in the name of Blake Rivera from Enterprise. On several occasions during that same time

period, agents have also observed this vehicle during the evening hours at 164 Curtis Street.

16.     After July 19, 2015, Investigator Pearce observed the SUBJECT VEHICLE, a

Dodge Challenger with Virginia State registration VHB-2879 parked in the driveway of 276

Woodsmoke Lane. A records check revealed that the SUBJECT VEHICLE is also owned

by EAN Holdings and was rented in the name of Blake Rivera from Enterprise Rental.

17.     In July of 2015, I received information from a second confidential source,

hereinafter "CS-2,"[2] that a father and son by the names of Vic and Blake were distributing

large amounts of cocaine in the Rochester, New York area. CS-2 stated that in mid-July

when he/she met them they were in a white Chrysler C30 and Blake showed him a large

amount of cocaine and stated to CS-2 that they were running the city (indicating that they

were distributing large amounts of cocaine). Blake told CS-2 that if CS-2 needed cocaine or

---

[2] Your affiant states that CS-2 is personally known to your affiant and to other members of Drug Enforcement
Administration (DEA) and the Greater Rochester Area Narcotics Enforcement Team (GRANET). CS-2 has pled
guilty to federal criminal charges and has agreed to cooperate in the hope of a reduced sentence. CS-2 has given
your affiant and RPD Investigator Timothy Pearce reliable information in the past, relative to narcotic trafficking and
illegal firearms, which has been independently corroborated and has led to controlled purchases of controlled
substances. CS-2 identity is being withheld from this affidavit to protect him/her from retaliation and to further
utilize him/her in this and future investigations.

heroin to contact Blake. Blake then provided his phone number to CS-2. CS-2 was shown 2 photo identification cards where CS-2 positively identified both Victor Rivera and Blake Rivera as the individuals that showed him the above mentioned cocaine while in the Chrysler C30.

18.     Investigator Pearce and I met with CS-2 to formulate a plan to meet with Blake Rivera regarding purchasing cocaine from him. CS-2 contacted Blake telephonically and Blake told him to meet him at a location on Emerson Street, Rochester, New York. Surveillance was established in this area and Investigator Pearce observed the SUBJECT VEHICLE parked on Emerson Street, where moments later CS-2 pulled up and the driver of the SUBJECT VEHICLE motioned for CS-2 to follow him. It was later identified from information received from CS-2 that the driver of the SUBJECT VEHICLE was Victor Rivera. CS-2 followed the SUBJECT VEHICLE to 164 Curtis Street, where Blake stated that the price of 62 grams of cocaine would be $2,600.00. Blake and CS-2 agreed to meet later to conduct the purchase. Investigator Pearce and I later met with CS-2, searched him/her and his/her vehicle which yielded negative results. Agents provided CS-2 with a predetermined amount of US currency, OAF. Under investigator surveillance, CS-2 drove to 164 Curtis Street where he met with Blake inside the residence. According to CS-2, Blake removed from his pocket the agreed amount of cocaine and handed it to CS-2, and the CS-2 then handed him the buy money. The SUBJECT VEHICLE was parked in the driveway of 164 Curtis at the time of this transaction.

10

## USE OF MOBILE TRACKING DEVICE

19.    The goal of this investigation is not limited to arresting Blake Rivera and charging him with the sales of cocaine to the two Confidential Sources. The goals also include identifying the locations where Rivera stashes his drugs and money and identifying Rivera's sources, workers and customers. This goal requires physical surveillance of Rivera when he leaves his house and drives to various locations around the city to conduct his drug trafficking activity. Based on my experience in this case and my training, I believe that it will be extremely difficult to establish and maintain surveillance on Blake RIVERA as he travels in and around Rochester, without the installation of a GPS device in Rivera's vehicle. Without the installation of a GPS device, surveillance of Rivera would require investigators to physically follow him as he drives around the city and out of the city. This increases the likelihood that Rivera and/or his associates will detect the police surveillance, thereby damaging the investigation by Rivera and his associates switching vehicles, changing addresses and phone numbers, concealing or moving to new locations their drugs and drug proceeds and even leaving the area for a period of time.

20.    Therefore, your affiant requests authorization to install and monitor a mobile tracking device on the SUBJECT VEHICLE. Use of a mobile tracking device will allow the investigating agents to monitor the locations to which the subject vehicle is driven without

having to remain in close sight surveillance, which will greatly reduce the risk that the investigation would be compromised. As noted above, your affiant believes that monitoring the mobile tracking device will lead to evidence of the aforementioned offenses, as well as to the identification of other individuals who are engaged in the commission of these offenses and related crimes.

21.    Your affiant requests authorization to install a mobile tracking device on the SUBJECT VEHICLE while it is in the Western District of New York. Because Blake Rivera usually parks the SUBJECT VEHICLE in his driveway at his residence, it may be necessary to enter onto private property in order to effect the installation and removal of the mobile tracking device on the SUBJECT VEHICLE. To ensure the safety of the executing officers and to avoid premature disclosure of this ongoing and covert investigation, it is requested that the Court authorize installation and removal of the tracking device at any time in the day or night. I believe that if Blake were to learn of the tracking device or efforts by the investigative team to install the device, it would alert him and any co-conspirators to the existence of this ongoing, covert investigation. I further believe that if Blake was alerted to the existence of this investigation, he and/or any co-conspirators may become more secretive in their criminal activities, conduct their criminal activities at different locations, harm suspected government agents and/or informants, threaten potential witnesses, flee the jurisdiction, conceal or destroy evidence, and otherwise seriously jeopardize this ongoing criminal investigation.

12

22.     In the event that the Court grants this application, investigators will monitor the mobile tracking device during both daytime and nighttime hours for a period of 45 days following the installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to public view or visual surveillance.

23.     As noted above, the SUBJECT VEHICLE is not the first rental car which Rivera has rented and driven. Should it become obvious that Rivera is no longer using the SUBJECT VEHICLE because he has returned it to Enterprise, the monitoring of the GPS device will cease and it will be removed from the SUBJECT VEHICLE. It is anticipated that if this happens, a new application for installation of GPS device on Rivera's new rental will be made to the Court.

24.     Given the contents of this Affidavit and the ongoing nature of the investigation described herein, I respectfully request that the Court order that this affidavit, the application and the warrant be and remain sealed for a period of 45 days after the use of the tracking device has ended or until such time as the Court orders.   In accordance with Title 18, United States Code, Section 3103a (b), and Federal Rule of Criminal Procedure 41(f) (3), I further request that the order granting this application delay notification of the execution of the order for a period not to exceed 45 days after the use of the mobile tracking

device has ended because there is reasonable cause to believe that providing immediate notification would seriously jeopardize an ongoing investigation. As demonstrated above, there is probable cause to believe that Blake Rivera is engaged in continued criminal activity. Were he to learn of the existence of the requested Order or to learn of the installation of the mobile tracking device, it would disclose to him that he is under investigation by law enforcement officers. Based on my training and experience, I believe that this would cause Blake to destroy evidence, such as narcotics, drug ledgers or the proceeds of narcotics transactions, and/or flee the jurisdiction and otherwise seriously jeopardize the ongoing criminal investigation. Notice therefore should be delayed so as to avoid seriously jeopardizing the ongoing criminal investigation involving Blake Rivera.

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the DEA or their authorized representatives, including but not limited to, Rochester Police Department officers, other law enforcement agents, and technicians assisting in the above-described investigation, to install a mobile tracking device in or on the SUBJECT VEHICLE within the Western District of New York within 10 calendar days of the issuance of the requested warrant, and to remove said mobile tracking device from the SUBJECT VEHICLE after the use and monitoring of the tracking device has ended (or earlier should Rivera return the SUBJECT VEHICLE to the rental car company; to enter onto private property for the purpose of installing, maintaining, repairing, and/or removing the tracking device; and to monitor the signals from that tracking device, for a period of 45

14

days following the issuance of the warrant, including signals produced when the SUBJECT

VEHICLE is inside private garages and other locations not open to the public view or visual

surveillance, and when the SUBJECT VEHICLE is within or outside the Western District of

New York, but within the United States.

Respectfully submitted,

Sabatino Smith
DEA Special Agent

Sworn to and subscribed before me on
this the _29_ day of July, 2015.

HONORABLE JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

15

# EXHIBIT 2

# United States District Court

## WESTERN DISTRICT OF NEW YORK

### In the Matter of

IN THE MATTER OF THE
APPLICATION OF THE UNITED
STATES OF AMERICA FOR A
WARRANT AUTHORIZING THE USE
AND INSTALLATION OF A TRACKING
DEVICE ON A SILVER 2015 GMC
YUKON BEARING MARYLAND
REGISTRATION 5BR1811 WITH VIN
NUMBER OF 1GKS2HKC2FR265780

:
:
:
:
:
:
:
:
:
:

15-MJ- *4148*

## WARRANT FOR THE INSTALLATION AND MONITORING OF A GPS TRACKING DEVICE

TO:     Any authorized law enforcement officer

An affidavit having been made before me by DEA Special Agent SABATINO SMITH, who believes probable cause exists for installation and monitoring of a tracking device on

SILVER 2015 GMC YUKON BEARING MARYLAND REGISTRATION 5BR1811 WITH VIN NUMBER OF 1GKS2HKC2FR265780

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. §§ 841 and 846.

I am satisfied and find that the affidavit establishes probable cause to believe that the vehicle so described is designed for use, is intended for use and/or is being used in facilitating the commission of offenses in violation of 21 U.S.C. §§ 841 and 846, and establishes probable cause for the issuance of this warrant, specifically probable cause to believe that the monitoring of a GPS tracking device on the SUBJECT VEHICLE will lead to evidence of violations of 21 U.S.C. §§ 841 and 846 and to the identification of other individuals involved in the commission of such offenses.

ACCORDINGLY, YOU ARE HEREBY AUTHORIZED, pursuant to 18 U.S.C. § 3117 and Fed. R. Crim. P. 41, to install, activate and monitor (and at the expiration of the monitoring period, to remove) a GPS tracking device in or on the above-described vehicle within the United States, on or before _September 2, 2015_ (not to exceed 10 calendar days), at any time in the day or night, as I find reasonable cause has been established, and
                                                            *limited to driveways*                    *(mwp)*
YOU ARE FURTHER AUTHORIZED to enter onto private property to effect the installation, maintenance, repair, and removal of the tracking device in or on the above-described vehicle, and

YOU ARE FURTHER AUTHORIZED to use and monitor the tracking device for 45 days (not to exceed 45 days from the date this warrant is issued), including when the above-described vehicle is inside any private garage or other location not open to public view or visual surveillance, within the United States, which time period may be extended pursuant to Fed. R. Crim. P. 41(e)(1)(B), and serve a copy of this warrant on the person whose vehicle was tracked within 30 calendar days after the use of the tracking device has ended, absent a subsequent request to further delay such notice as provided in Fed. R. Crim. P. 41(f)(3), and return this warrant to the undersigned within 10 calendar days after the use of the tracking device has ended.

IT IS FURTHER ORDERED that this warrant, and the accompanying application and affidavit submitted in support thereof, as they reveal the details of an ongoing investigation, be sealed until further order of the Court, except that copies of the warrant may be maintained by the United States Attorney's Office, and may be served on Special Agents of the United States Drug Enforcement Administration, and any other technical, investigative, or law enforcement officers assigned to this investigation, as necessary to effectuate this warrant.

_August 26 2015   at 4:40pm_                at          _Rochester, New York_
Date and Time Issued                                              City and State


HON. Marian W. Payson, U.S. Magistrate Judge                _Marian W Payson_
Name & Title of Judicial Officer                                Signature of Judicial Officer

# United States District Court

## WESTERN DISTRICT OF NEW YORK

In the Matter of

IN THE MATTER OF THE
APPLICATION OF THE UNITED
STATES OF AMERICA FOR A
WARRANT AUTHORIZING THE USE
AND INSTALLATION OF A TRACKING
DEVICE ON A SILVER 2015 GMC
YUKON BEARING MARYLAND
REGISTRATION 5BR1811 WITH VIN
NUMBER OF 1GKS2HKC2FR265780

:
:
:
:
:       15-MJ- 4148
:
:
:
:

### APPLICATION FOR A WARRANT AUTHORIZING
### THE INSTALLATION AND MONITORING OF A GPS TRACKING DEVICE

I, <u>SABATINO SMITH.</u>, being duly sworn depose and say:

I am a Special Agent with U.S. Drug Enforcement Administration (DEA), and have reason to believe that probable cause exists for the installation and monitoring of a tracking device on

SILVER 2015 GMC YUKON BEARING MARYLAND REGISTRATION 5BR1811
WITH VIN NUMBER OF 1GKS2HKC2FR265780

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. §§ 841 and 846.

The facts to support a finding of Probable Cause are as follows:

#### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:    (✔) Yes    (  ) No

_____
SABATINO SMITH
Signature of Affiant

Sworn to before me and subscribed in my presence,

<u>August 26 2015</u>
Date

<u>Rochester, New York</u>
City and State

_____
HON. Marian W. Payson, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE            :
APPLICATION OF THE UNITED       :
STATES OF AMERICA FOR A         :
WARRANT AUTHORIZING THE USE     :          15-MJ- 4/48
AND INSTALLATION OF A TRACKING  :
DEVICE ON A SILVER 2015 GMC YUKON :
BEARING MARYLAND REGISTRATION   :
5BR1811 WITH VIN 1GKS2HKC2FR265780 :

## AFFIDAVIT IN SUPPORT OF MOTION FOR GPS TRACKING DEVICE

Your affiant, Sabatino Smith, having been duly sworn, states the following:

1.      I am a Special Agent with the Drug Enforcement Administration (DEA), and as

such I am an "investigative or law enforcement officer" of the United States within the meaning

of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is

empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in

Title 21, United States Code, Section 801, et seq. And Title 18, United States Code, Section

2516(1).

2.      I have been a Special Agent with the Drug Enforcement Administration since

September 2009. Prior to being a Special Agent with the Drug Enforcement Administration, I

was employed as a Special Agent and Counter Sniper with the United States Secret Service for

eight years. In May of 2000, I received a Bachelor's of Science in Political Science from the

State University of New York at Brockport. During my employment with the Drug

1

Enforcement Administration, I have received (20) weeks of training in the methods used by drug trafficking and money laundering organizations. I have received training in the areas of drug identification, drug distribution methods, money laundering, financial investigations, and drug enforcement techniques. I am familiar with the methods of use, effects, distribution, appearance, as well as the methods of manufacture of controlled substances. I have experience in the investigation of violations of federal and state narcotics laws. I have conducted and participated in numerous narcotics investigations resulting in the arrest and conviction of drug distributors, and the seizure of quantities of controlled substances. During these investigations my participation has included, but has not been limited to, undercover operations; direction of confidential sources; debriefing of defendants and others involved in the distribution and consumption of illegal drugs; execution of search warrants; execution of arrest warrants; affiant on court-authorized Title III interceptions, search warrants, and criminal complaints; and I have been involved in numerous surveillance operations.

3.    I am presently investigating the activities of Blake RIVERA  for possible violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute, and distribution, of a controlled substance) and 846 (conspiracy to possess with intent to distribute, and to distribute, a controlled substance). I submit this affidavit in support of an application for a warrant authorizing the installation and use of a mobile tracking device on the automobile currently being used by Blake RIVERA, that is, a silver 2015 GMC Yukon, bearing Maryland registration 5BR1811 and VIN 1GKS2HKC2FR265780, registered to EAN

2

Holdings LLC, 701 Wedeman Avenue, Linthicum, Maryland 21090 and rented in the name of and utilized by Blake RIVERA (hereinafter SUBJECT VEHICLE).

4.      Probable cause exists to believe, and I do believe, as more fully set forth herein, that the installation and use of a mobile tracking device in or on the SUBJECT VEHICLE will lead to evidence of the above referenced crimes as well as the identification of individuals who are engaged in the commission of those and related crimes. The purpose of this affidavit is solely to establish probable cause for the installation, tracking, and monitoring of a mobile tracking device and therefore not all aspects of this investigation are contained herein. I have participated in the investigation that is the subject of this affidavit in conjunction with other law enforcement officers. As a result of this participation, as well as information provided by other law enforcement officers, I am fully familiar with the facts set forth herein.

## INVESTIGATION BACKGROUND

5.      On July 29, 2015, the Honorable Jonathan W. Feldman, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device for a period of 45 days on a 2015 Dodge Challenger, bearing Virginia registration VHB-2879 and VIN 2C3CDZAG9FH850140, rented in the name of and utilized by Blake RIVERA. A copy of the search warrant and underlying application are attached hereto as Exhibit 1 and incorporated by reference as if fully set forth herein (hereinafter "the July 29th application").

3

6.      The investigative team began monitoring the initial GPS tracking device on the 2015 Dodge Challenger on or about August 1, 2015. During the monitoring period, the GPS tracking device has shown that the 2015 Dodge Challenger routinely traveled from RIVERA's residence at 276 Woodsmoke Lane, Rochester, New York, to 164 Curtis Street, Rochester, New York. As detailed in the attached and incorporated July 29th application, 164 Curtis Street is the location from which RIVERA distributes quantities of cocaine. RIVERA has repeated the activity described in paragraph 18 of the July 29th application; in other words, the GPS tracking device has shown that the 2015 Dodge Challenger would travel to the same area on Emerson Street where RIVERA previously met CS-2 and then, after a brief time period, travel to 164 Curtis Street. The GPS tracking device showed that the 2015 Dodge Challenger would take circuitous routes on residential side streets when traveling to and from 164 Curtis Street, which, based on my training and experience, is a counter-surveillance tactic commonly used by drug traffickers to try to detect the presence of law enforcement officers. It should be noted, however, that during the 24 days of monitoring of the GPS tracking device on the 2015 Dodge Challenger, the investigative team was unable to identify where RIVERA was obtaining his drug supply.

7.      On or about August 25, 2015, the investigative team observed the 2015 Dodge Challenger parked in front of the Enterprise Car Rental port at the Greater Rochester International Airport. DEA Special Agent William Reichard observed RIVERA pulling out of the parking lot at the airport driving the SUBJECT VEHICLE. A New York State Department

4

of Motor Vehicles check showed that the SUBJECT VEHICLE is registered to EAN Holdings LLC, 701 Wedeman Avenue, Linthicum, Maryland 21090. This is the same company to which the 2015 Dodge Challenger was registered, albeit at a different address. Information received from an employee of Enterprise Rental Company revealed that the SUBJECT VEHICLE was rented by Blake RIVERA.1

## USE OF GPS TRACKING DEVICE

8.       The goal of this investigation is not limited to arresting Blake RIVERA and charging him with the sales of cocaine to the two Confidential Sources. The goals also include identifying the locations where RIVERA stashes his drugs and money and identifying RIVER's sources, workers and customers. While monitoring of the GPS tracking device on the 2015 Dodge Challenger between August 1, 2015, and August 25, 2015, confirmed some of RIVERA's patterns of distributing narcotics and possibly identified other stash locations, it did not yield any evidence relating to the identities or locations of his suppliers. It is anticipated that, in the event the investigative team can monitor the requested GPS tracking device on the SUBJECT VEHICLE for a full 45-day period, it will lead to evidence identifying his supplier(s) and the location(s) where his supplier(s) operates. This goal requires physical surveillance of RIVERA when he leaves his house and drives to various locations around the city to conduct his drug trafficking activity. Based on my experience in this case and my training, I believe that

_____

1 After it was determined that RIVERA returned the 2015 Dodge Challenger to Enterprise, the investigative team removed the GPS tracking device from that vehicle.

it will be extremely difficult to establish and maintain surveillance on RIVERA as he travels in and around Rochester, without the installation of a GPS tracking device in the SUBJECT VEHICLE. Without the installation of a GPS device, surveillance of RIVERA would require investigators to physically follow him as he drives around the city and out of the city. This increases the likelihood that RIVERA and/or his associates will detect the police surveillance, thereby damaging the investigation by RIVERA and his associates switching vehicles, changing addresses and phone numbers, concealing or moving to new locations their drugs and drug proceeds and even leaving the area for a period of time.

9.     Therefore, your affiant requests authorization to install and monitor a GPS mobile tracking device on the SUBJECT VEHICLE. Use of a mobile tracking device will allow the investigating agents to monitor the locations to which the SUBJECT VEHICLE is driven without having to remain in close sight surveillance, which will greatly reduce the risk that the investigation would be compromised. As noted above, your affiant believes that monitoring the mobile tracking device will lead to evidence of the aforementioned offenses, as well as to the identification of other individuals who are engaged in the commission of these offenses and related crimes.

10.     Your affiant requests authorization to install a GPS mobile tracking device on the SUBJECT VEHICLE while it is in the Western District of New York. Because Blake RIVERA usually parks the SUBJECT VEHICLE in his driveway at his residence, it may be necessary to enter onto private property in order to effect the installation and removal of the mobile tracking

6

device on the SUBJECT VEHICLE. To ensure the safety of the executing officers and to avoid premature disclosure of this ongoing and covert investigation, it is requested that the Court authorize installation and removal of the tracking device at any time in the day or night. I believe that if RIVERA were to learn of the tracking device or efforts by the investigative team to install the device, it would alert him and any co-conspirators to the existence of this ongoing, covert investigation. I further believe that if RIVERA was alerted to the existence of this investigation, he and/or any co-conspirators may become more secretive in their criminal activities, conduct their criminal activities at different locations, harm suspected government agents and/or informants, threaten potential witnesses, flee the jurisdiction, conceal or destroy evidence, and otherwise seriously jeopardize this ongoing criminal investigation.

11.     In the event that the Court grants this application, investigators will monitor the mobile tracking device during both daytime and nighttime hours for a period of 45 days following the installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to public view or visual surveillance.

12.     As detailed in the attached and incorporated July 29th application, the SUBJECT VEHICLE is not the first rental car which RIVERA has rented and driven. Should it become obvious that RIVERA is no longer using the SUBJECT VEHICLE because he has returned it to Enterprise, the monitoring of the GPS device will cease and it will be removed from the SUBJECT VEHICLE. It is anticipated that if this happens, a new application for installation of GPS device on RIVERA's new rental will be made to the Court.

7

13.    Given the contents of this Affidavit and the ongoing nature of the investigation described herein, I respectfully request that the Court order that this affidavit, the application and the warrant be and remain sealed for a period of 45 days after the use of the tracking device has ended or until such time as the Court orders.    In accordance with Title 18, United States Code, Section 3103a (b), and Federal Rule of Criminal Procedure 41(f) (3), I further request that the order granting this application delay notification of the execution of the order for a period not to exceed 45 days after the use of the mobile tracking device has ended because there is reasonable cause to believe that providing immediate notification would seriously jeopardize an ongoing investigation.    As demonstrated above, there is probable cause to believe that Blake RIVERA is engaged in continued criminal activity.    Were he to learn of the existence of the requested Order or to learn of the installation of the mobile tracking device, it would disclose to him that he is under investigation by law enforcement officers.    Based on my training and experience, I believe that this would cause RIVERA to destroy evidence, such as narcotics, drug ledgers or the proceeds of narcotics transactions, and/or flee the jurisdiction and otherwise seriously jeopardize the ongoing criminal investigation.    Notice therefore should be delayed so as to avoid seriously jeopardizing the ongoing criminal investigation involving Blake RIVERA.

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the DEA or their authorized representatives, including but not limited to, Rochester Police Department officers, other law enforcement agents, and technicians assisting in the above-described investigation, to install a GPS mobile tracking device in or on the SUBJECT

8

VEHICLE within the Western District of New York within 10 calendar days of the issuance of the requested warrant, and to remove said mobile tracking device from the SUBJECT VEHICLE after the use and monitoring of the tracking device has ended (or earlier should RIVERA return the SUBJECT VEHICLE to the rental car company; to enter onto private property for the purpose of installing, maintaining, repairing, and/or removing the tracking device; and to monitor the signals from that tracking device, for a period of 45 days following the issuance of the warrant, including signals produced when the SUBJECT VEHICLE is inside private garages and other locations not open to the public view or visual surveillance, and when the SUBJECT VEHICLE is within or outside the Western District of New York, but within the United States.

Respectfully submitted,

SABATINO SMITH
DEA Special Agent


Sworn to and subscribed before me on
this the __26__ day of August, 2015.

HONORABLE MARAIN W. PAYSON
United States Magistrate Judge

9

**EXHIBIT 3**

# United   States   District   Court

## WESTERN DISTRICT OF NEW YORK

In the Matter of

| | |
|---|---|
| IN THE MATTER OF THE | : |
| APPLICATION OF THE UNITED | : |
| STATES OF AMERICA FOR A | : |
| WARRANT AUTHORIZING THE USE | :     15-MJ- *4154* |
| AND INSTALLATION OF A TRACKING | : |
| DEVICE ON A GRAY 2016 GMC ACADIA | : |
| BEARING NEW YORK REGISTRATION | : |
| GZR1144 WITH VIN 1GKKVRKD1GJ113205 | : |

## WARRANT FOR THE INSTALLATION AND MONITORING OF A GPS TRACKING DEVICE

TO:    Any authorized law enforcement officer

An affidavit having been made before me by DEA Special Agent SABATINO SMITH, who believes probable cause exists for installation and monitoring of a tracking device on

GRAY 2016 GMC ACADIA, BEARING NEW YORK REGISTRATIONGZR1144 WITH VIN 1GKKVRKD1GJ113205

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. §§ 841 and 846.

I am satisfied and find the affidavit establishes probable cause to believe that the vehicle so described is designed for use, is intended for use and/or is being used in facilitating the commission of offenses in violation of 21 U.S.C. §§ 841 and 846, and establishes probable cause for the issuance of this warrant, specifically probable cause to believe that the monitoring of a GPS tracking device on the SUBJECT VEHICLE will lead to evidence of violations of 21 U.S.C. §§ 841 and 846 and to the identification of other individuals involved in the commission of such offenses.

ACCORDINGLY, YOU ARE HEREBY AUTHORIZED, pursuant to 18 U.S.C. § 3117 and Fed. R. Crim. P. 41, to install, activate and monitor (and at the expiration of the monitoring period, to remove) a GPS tracking device in or on the *mwP 10/1/15* above-described vehicle within the United States, on or before _____ (not to exceed 10 calendar days) at any time in the day or night, as I find reasonable cause has been established, and ( limited to driveways ) *mwP 10/1/15*

YOU ARE FURTHER AUTHORIZED to enter onto private property to effect the installation, maintenance, repair, and removal of the tracking device in or on the above-described vehicle, and

YOU ARE FURTHER AUTHORIZED to use and monitor the tracking device for 45 days (not to exceed 45 days from the date this warrant is issued), including when the above-described vehicle is inside any private garage or other location not open to public view or visual surveillance, within the United States, which time period may be extended pursuant to Fed. R. Crim. P. 41(e)(1)(B), and serve a copy of this warrant on the person whose vehicle was tracked within 30 calendar days after the use of the tracking device has ended, absent a subsequent request to further delay such notice as provided in Fed. R. Crim. P. 41(f)(3), and return this warrant to the undersigned within 10 calendar days after the use of the tracking device has ended.

IT IS FURTHER ORDERED that this warrant, and the accompanying application and affidavit submitted in support thereof, as they reveal the details of an ongoing investigation, be sealed until further order of the Court, except that copies of the warrant may be maintained by the United States Attorney's Office, and may be served on Special Agents of the

United States Drug Enforcement Administration, and any other technical, investigative, or law enforcement officers assigned to this investigation, as necessary to effectuate this warrant.

Case 6:15-mj-00673-JWF   Document 1   Filed 11/13/15   Page 46 of 60

October 1, 2015 at 3:55 pm       at       Rochester, New York

Date and Time Issued                            City and State

HON. Marian W. Payson, U.S. Magistrate Judge     *Marian W Payson*

Name & Title of Judicial Officer                 Signature of Judicial Officer

Tracking Device Warrant (Rev. 04/07)

# RETURN

| DATE WARRANT RECEIVED: | DATE AND TIME DEVICE INSTALLED: |
|---|---|

PERIOD OF MONITORING:

DATE DEVICE REMOVED:

| COPY OF WARRANT SERVED ON: | DATE OF SERVICE: |
|---|---|

OTHER INFORMATION:

## CERTIFICATION

I swear that this return is a true and accurate account of the installation and monitoring of the tracking device.

_____

Subscribed, sworn to, and returned before me this date.

_____        _____
                                U.S. Judge or Magistrate Judge                    Date

# United States District Court

### WESTERN DISTRICT OF NEW YORK

In the Matter of

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE USE AND INSTALLATION OF A TRACKING DEVICE ON A GRAY 2016 GMC ACADIA BEARING NEW YORK REGISTRATION GZR1144 WITH VIN 1GKKVRKD1GJ113205 : : : : : : : : | 15-MJ-*454* |

## APPLICATION FOR A WARRANT AUTHORIZING
## THE INSTALLATION AND MONITORING OF A GPS TRACKING DEVICE

I, <u>SABATINO SMITH.</u>, being duly sworn depose and say:

I am a Special Agent with U.S. Drug Enforcement Administration (DEA), and have reason to believe that probable cause exists for the installation and monitoring of a tracking device on

GRAY 2016 GMC ACADIA, BEARING NEW YORK REGISTRATIONGZR1144 WITH VIN 1GKKVRKD1GJ113205

which is currently in the Western District of New York, and which is designed for use, intended for use or is being used in committing offenses in violation of 21 U.S.C. §§ 841 and 846.

The facts to support a finding of Probable Cause are as follows:

### SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:  (✔) Yes  ( ) No

_____
SABATINO SMITH
Signature of Affiant

Sworn to before me and subscribed in my presence,

<u>October</u>
<s>September</s> 1, 2015 at 3:55 pm        at  <u>Rochester, New York</u>
Date                                          City and State

<u>HON. Marian W. Payson, U.S. Magistrate Judge</u>        _____
Name & Title of Judicial Officer                    Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

IN THE MATTER OF THE        :
APPLICATION OF THE UNITED     :
STATES OF AMERICA FOR A      :
WARRANT AUTHORIZING THE USE  :      15-MJ-*4154*
AND INSTALLATION OF A TRACKING :
DEVICE ON A GRAY 2016 GMC ACADIA :
BEARING NEW YORK REGISTRATION  :
GZR1144 WITH VIN 1GKKVRKD1GJ113205 :

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR GPS TRACKING DEVICE

Your affiant, Sabatino Smith, having been duly sworn, states the following:

1.     I am a Special Agent with the Drug Enforcement Administration (DEA), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801, et seq. And Title 18, United States Code, Section 2516(1). I submit this affidavit in support of an application for a warrant authorizing the installation and use of a mobile tracking device on a gray 2016 GMC Acadia, bearing New York registration GZR 1144 and VIN 1GKKVRKD1GJ113205 and rented in the name of and utilized by Blake RIVERA (hereinafter SUBJECT VEHICLE).

2.     I have been a Special Agent with the Drug Enforcement Administration since

1

September 2009. Prior to being a Special Agent with the Drug Enforcement Administration,

I was employed as a Special Agent and Counter Sniper with the United States Secret Service

for eight years. In May of 2000, I received a Bachelor's of Science in Political Science from

the State University of New York at Brockport. During my employment with the Drug

Enforcement Administration, I have received (20) weeks of training in the methods used by

drug trafficking and money laundering organizations. I have received training in the areas

of drug identification, drug distribution methods, money laundering, financial

investigations, and drug enforcement techniques. I am familiar with the methods of use,

effects, distribution, appearance, as well as the methods of manufacture of controlled

substances. I have experience in the investigation of violations of federal and state narcotics

laws. I have conducted and participated in numerous narcotics investigations resulting in the

arrest and conviction of drug distributors, and the seizure of quantities of controlled

substances. During these investigations my participation has included, but has not been

limited to, undercover operations; direction of confidential sources; debriefing of defendants

and others involved in the distribution and consumption of illegal drugs; execution of search

warrants; execution of arrest warrants; affiant on court-authorized Title III interceptions,

search warrants, and criminal complaints; and I have been involved in numerous

surveillance operations.

3.      I am presently investigating the activities of Blake RIVERA for possible

violations of Title 21, United States Code, Sections 841(a)(1) (possession with intent to

distribute, and distribution, of a controlled substance) and 846 (conspiracy to possess with

intent to distribute, and to distribute, a controlled substance).

4.     Probable cause exists to believe, and I do believe, as more fully set forth

herein, that the installation and use of a mobile tracking device in or on the SUBJECT

VEHICLE will lead to evidence of the above referenced crimes as well as the identification

of individuals who are engaged in the commission of those and related crimes.  The purpose

of this affidavit is solely to establish probable cause for the installation, tracking, and

monitoring of a mobile tracking device and therefore not all aspects of this investigation are

contained herein.  I have participated in the investigation that is the subject of this affidavit

in conjunction with other law enforcement officers.  As a result of this participation, as well

as information provided by other law enforcement officers, I am fully familiar with the facts

set forth herein.

## INVESTIGATION BACKGROUND

5.     On July 29, 2015, the Honorable Jonathan W. Feldman, United States

Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking

device for a period of 45 days on a 2015 Dodge Challenger, bearing Virginia registration

VHB-2879 and VIN 2C3CDZAG9FH850140, a rental car owned by EAN Holdings (which

owns Enterprise Rental Car company) and rented in the name of and utilized by Blake

RIVERA.  A copy of the search warrant and underlying application are attached hereto as

3

Exhibit 1 and incorporated by reference as if fully set forth herein (hereinafter "the July 29th application").

6.      On August 25, 2015, Rivera returned the Dodge Challenger described in paragraph 5 to the Enterprise rental office at the Rochester International Airport. At that time, Rivera rented in his own name and began driving a different car from the same rental office, a 2015 GMC Yukon, bearing Maryland registration 5BR-1811 and VIN 1GKS2HKC2FR265780. On August 26, 2015, the Honorable Marian W. Payson, United States Magistrate Judge, issued a warrant authorizing the installation and use of a GPS tracking device on the Yukon for a period of 45 days. A copy of the search warrant and underlying application are attached hereto as Exhibit 2 and incorporated by reference as if fully set forth herein (hereinafter "the August 26th application").

7.      The investigative team began monitoring the GPS tracking device on the 2015 GMC Yukon on or about August 27, 2015. During the monitoring period, RIVERA was observed driving the Yukon from his residence to suspected stash locations. Rivera was also observed driving the Yukon to meet with a DEA confidential informant, during which meeting Rivera sold the CI a quantity of cocaine. Additionally, on September 14th 2015 at approximately 4:00 a.m., the GPS tracking device assisted agents in identifying an unknown black female (UF) being picked up by RIVERA at the bus station in Rochester, NY. Video footage from the bus station showed the UF carrying only a shoulder bag exiting the terminal at the bus station and walk to the passenger side of RIVERA's vehicle, which had been sitting idle

4

at the bus station for approximately 5 minutes prior to the UF arriving at the bus station in Rochester, New York. The GPS device showed the 2015 GMC Yukon drive directly to the Comfort Inn on Ridge Road; where video footage showed RIVERA and the UF enter the Comfort Inn. Earlier that day the GPS device showed the Yukon at the Comfort Inn at 8:37 p.m. on September 13th and information received from the hotel revealed that RIVERA rented a room for the night of the 13th. RIVERA stayed at the Comfort Inn for approximately 40 minutes and then left the hotel. The UF remained at the hotel and checked out the following day and left the hotel via a taxi cab in the early afternoon. Information received has shown that RIVERA has rented hotel rooms at this Comfort Inn for one night on numerous different occasions in a 5 month period. Based on my training and experience this is behavior commonly associated with drug couriers transporting large amounts of narcotics from the narcotic supplier's location to the intended customer's location.

8. It should be noted that approximately two weeks prior to the UF meeting with RIVERA, the GPS tracking device showed the 2015 Dodge Challenger (referenced in paragraph 5) travel from Rochester, NY to Buffalo, NY in the early morning hours and at approximately 4:30 a.m. the 2015 Dodge Challenger was parked at a McDonalds parking lot located on Main St. in Amherst, NY for approximately 40 minutes before returning directly to Rochester, NY. The GPS tracking device was set to give the location every 30 seconds and it showed the 2015 Dodge Challenger drive and park in the middle of the parking lot and then depart, never driving in the area of the McDonald's drive thru. It was identified that the McDonald's drive thru was

5

only part of the restaurant that was open at that time. Based on my training and experience it is not common practice to drive to a location at this time of day when no stores are open and stay for a short period of time and then drive an hour back to your original destination.

9.      As detailed in the attached in paragraph (7) RIVERA often operates during the late night early morning hours and there is little vehicular traffic for law enforcement to blend with at these times. Without the use of a GPS tracking device agents would most likely be spotted by RIVERA or his associates and compromise the investigation. As agents learn RIVERA's methods of operation for his drug trafficking operation it is crucial to this investigation for agents to continue to utilize the GPS tracking device to further gain information on when and how he is being supplied cocaine. As well as, identifying additional co-conspirators and stash locations that RIVERA utilizes to operate his drug trafficking organization.

10.      On or about September 27, 2015, the 2015 GMC Yukon was returned to the Enterprise Car Rental port at the Greater Rochester International Airport. That same day, Blake RIVERA rented the SUBJECT VEHICLE from Enterprise. The next morning, in confirmation that RIVERA was using the SUBJECT VEHICLE, Rochester Police Department Investigator Pearce observed the SUBJECT VEHICLE parked in the driveway of RIVERA's residence at 276 Woodsmoke Lane, Rochester, New York. A New York State Department of Motor Vehicles check showed that the SUBJECT VEHICLE is registered to EAN Holdings LLC, 6929 N Lakewood Avenue, Tulsa, Oklahoma 74117.

6

This is the same company to which the 2015 Dodge Challenger and 2015 GMC Yukon was registered, albeit at a different address.[1]

## USE OF GPS TRACKING DEVICE

11.     The goal of this investigation is not limited to arresting Blake RIVERA and charging him with the sales of cocaine to the two Confidential Sources. The goals also include identifying the locations where RIVERA stashes his drugs and money and identifying RIVERA's sources, workers and customers. While monitoring of the GPS tracking device on the 2015 GMC Yukon between August 27, 2015, and September 27, 2015, gave agents information on where RIVERA may be receiving his cocaine shipments it did not produce any evidence relating to the identities or locations of his suppliers. It is anticipated that, in the event the investigative team can monitor the requested GPS tracking device on the SUBJECT VEHICLE for a full 45-day period, it will lead to evidence identifying his supplier(s) and the location(s) where his supplier(s) operates. It also should be noted that the previous trackers were never monitored the full 45 day period, they were monitored for 24 days and 28 days respectively because RIVERA returned the rental v vehicles and monitoring stopped at that time. Based on my experience in this case and my training, I believe that it will be extremely difficult to establish and maintain surveillance on

---

[1] The GPS tracking device has since been removed from the 2015 GMC Yukon.

7

RIVERA as he travels in and around Rochester and outlying areas, without the installation of a GPS tracking device in the SUBJECT VEHICLE. Without the installation of a GPS device, surveillance of RIVERA would require investigators to physically follow him as he drives around the city and out of the city. This increases the likelihood that RIVERA and/or his associates will detect the police surveillance, thereby damaging the investigation by RIVERA and his associates switching vehicles, changing addresses and phone numbers, concealing or moving to new locations their drugs and drug proceeds and even leaving the area for a period of time.

12.    Therefore, your affiant requests authorization to install and monitor a GPS mobile tracking device on the SUBJECT VEHICLE. Use of a mobile tracking device will allow the investigating agents to monitor the locations to which the SUBJECT VEHICLE is driven without having to remain in close sight surveillance, which will greatly reduce the risk that the investigation would be compromised. As noted above, your affiant believes that monitoring the mobile tracking device will lead to evidence of the aforementioned offenses, as well as to the identification of other individuals who are engaged in the commission of these offenses and related crimes.

13.    Your affiant requests authorization to install a GPS mobile tracking device on the SUBJECT VEHICLE while it is in the Western District of New York. Because Blake RIVERA usually parks the SUBJECT VEHICLE in his driveway at his residence, it may be necessary to enter onto private property in order to effect the installation and removal of the

8

mobile tracking device on the SUBJECT VEHICLE. To ensure the safety of the executing officers and to avoid premature disclosure of this ongoing and covert investigation, it is requested that the Court authorize installation and removal of the tracking device at any time in the day or night. I believe that if RIVERA were to learn of the tracking device or efforts by the investigative team to install the device, it would alert him and any co-conspirators to the existence of this ongoing, covert investigation. I further believe that if RIVERA was alerted to the existence of this investigation, he and/or any co-conspirators may become more secretive in their criminal activities, conduct their criminal activities at different locations, harm suspected government agents and/or informants, threaten potential witnesses, flee the jurisdiction, conceal or destroy evidence, and otherwise seriously jeopardize this ongoing criminal investigation.

14.    In the event that the Court grants this application, investigators will monitor the mobile tracking device during both daytime and nighttime hours for a period of 45 days following the installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to public view or visual surveillance.

15.    As detailed in the attached and incorporated July 29th and August 26th applications, the SUBJECT VEHICLE is not the first rental car which RIVERA has rented and driven. Should it become obvious that RIVERA is no longer using the SUBJECT VEHICLE because he has returned it to Enterprise, the monitoring of the GPS device will cease and it will be removed from the SUBJECT VEHICLE. It is anticipated that if this

9

happens, a new application for installation of GPS device on RIVERA's new rental will be made to the Court.

16.     Given the contents of this Affidavit and the ongoing nature of the investigation described herein, I respectfully request that the Court order that this affidavit, the application and the warrant be and remain sealed for a period of 45 days after the use of the tracking device has ended or until such time as the Court orders.    In accordance with Title 18, United States Code, Section 3103a (b), and Federal Rule of Criminal Procedure 41(f) (3), I further request that the order granting this application delay notification of the execution of the order for a period not to exceed 45 days after the use of the mobile tracking device has ended because there is reasonable cause to believe that providing immediate notification would seriously jeopardize an ongoing investigation.  As demonstrated above, there is probable cause to believe that Blake RIVERA is engaged in continued criminal activity.  Were he to learn of the existence of the requested Order or to learn of the installation of the mobile tracking device, it would disclose to him that he is under investigation by law enforcement officers.  Based on my training and experience, I believe that this would cause RIVERA to destroy evidence, such as narcotics, drug ledgers or the proceeds of narcotics transactions, and/or flee the jurisdiction and otherwise seriously jeopardize the ongoing criminal investigation.  Notice therefore should be delayed so as to avoid seriously jeopardizing the ongoing criminal investigation involving Blake RIVERA.

## CONCLUSION

WHEREFORE, I respectfully request that the Court issue a warrant authorizing

members of the DEA or their authorized representatives, including but not limited to,

Rochester Police Department officers, other law enforcement agents, and technicians

assisting in the above-described investigation, to install a GPS mobile tracking device in or

on the SUBJECT VEHICLE within the Western District of New York within 10 calendar

days of the issuance of the requested warrant, and to remove said mobile tracking device

from the SUBJECT VEHICLE after the use and monitoring of the tracking device has

ended (or earlier should RIVERA return the SUBJECT VEHICLE to the rental car

company; to enter onto private property for the purpose of installing, maintaining, repairing,

and/or removing the tracking device; and to monitor the signals from that tracking device,

for a period of 45 days following the issuance of the warrant, including signals produced

when the SUBJECT VEHICLE is inside private garages and other locations not open to the

public view or visual surveillance, and when the SUBJECT VEHICLE is within or outside the Western District of New York, but within the United States.

Respectfully submitted,

SABATINO SMITH
DEA Special Agent

Sworn to and subscribed before me on
this the __1__ day of October, 2015.

HONORABLE MARIAN W. PAYSON
United States Magistrate Judge

12